**U.S. Bankruptcy Court**

**Eastern District of Pennsylvania**

Notice of Electronic Claims Filing

The following transaction was received from NICHOLAS, BRIAN on 5/18/2023 at 4:51 PM EST

[File another claim](#)

| | |
|---|---|
| **Case Name:** | Mark F Wilk |
| **Case Number:** | [23-10789-amc](#) |
| **Creditor Name:** | PHILADELPHIA FEDERAL CREDIT UNION<br>c/o Cenlar FSB Attn BK Dept<br>425 Phillips Blvd<br>Ewing, NJ 08618 |
| **Claim Number:** | [8](#)   [Claims Register](#) |

**Amount Claimed:** $179,886.63
**Amount Secured:** $179886.63
**Amount Priority:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**410.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=5/18/2023] [FileNumber=31310607-0] [057b8e365f510d8fade814d6c3eb5a13dc75442d1cc0bae37a8c5c0289ab2de266df9b5f276f6e65b0e6969bc76c38e6623406d59afafad762c8276aaff1d65e]]
**Document description:**Exhibit 410a Payment History
**Original filename:**C:\fakepath\410a.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=5/18/2023] [FileNumber=31310607-1] [52689299ba93e1ebe99fdd8c36c6029c680726a237aebc2592495486870ca84caf03738f1e043cca98c6f14c8a39cacec345a0085a5ebff5dc1df45359fff309]]
**Document description:**Exhibit Escrow Analysis
**Original filename:**C:\fakepath\EA for POC.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=5/18/2023] [FileNumber=31310607-2] [817093acc42d25af91d0cb77265877da83498fa248062969f6846961a6b138893e246023c8420863770e9ea20a3f59ff1cd7b77ad7ebb11d6a2005655e4f1dc3]]

**Document description:**Exhibit Loan Documents
**Original filename:**C:\fakepath\Wilk 23-10789 POC loan docs.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=5/18/2023] [FileNumber=31310607-
3] [3e23ee54f91084a64632f2825bf2181768db3210a8ac1b9033443f6925159633a9
2b9951f740c6fb774f630a522c9b630194a19e51acd0b4a69e179fca6fb43c]]

**23-10789-amc Notice will be electronically mailed to:**

MICHAEL PATRICK FARRINGTON on behalf of Creditor Philadelphia Federal Credit Union
mfarrington@kmllawgroup.com

WILLIAM J LEVANT on behalf of Creditor Philadelphia Federal Credit Union
efile.wjl@kaplaw.com, wlevant@gmail.com

DAVID M. OFFEN on behalf of Debtor Mark F Wilk
dmo160west@gmail.com, davidoffenecf@gmail.com;offendr83598@notify.bestcase.com

United States Trustee
USTPRegion03.PH.ECF@usdoj.gov

KENNETH E. WEST
ecfemails@ph13trustee.com, philaecf@gmail.com

**23-10789-amc Notice will not be electronically mailed to:**

Synchrony Bank
c/o PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA 23541

**Fill in this information to identify the case:**

Debtor 1    Mark F Wilk
(Spouse, if filing)

United States Bankruptcy Court for the EASTERN District of Pennsylvania

Case number   23-10789 AMC

Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. **Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

| | | |
| --- | --- | --- |
| 1. Who is the current creditor? | **PHILADELPHIA FEDERAL CREDIT UNION** | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor _____ | |
| 2. Has this claim been acquired from someone else? | ☒ No<br>☐ Yes. From whom? _____ | |
| 3. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
| | **Cenlar FSB Attn BK Dept**<br>Name | **Cenlar FSB Attn Payment Processing**<br>Name |
| | **425 Phillips Blvd**<br>Number          Street | **425 Phillips Blvd**<br>Number          Street |
| | **Ewing, NJ 08618**<br>City          State          Zip Code | **Ewing, NJ 08618**<br>City          State          Zip Code |
| | **609-883-3900**<br>Contact phone | **609-883-3900**<br>Contact phone |
| | **BKelectronicnotices@cenlar.com**<br>Contact Email | **BKelectronicnotices@cenlar.com**<br>Contact Email |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br><br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | |
| 4. Does this claim amend one already filed? | ☒ No<br>☐ Yes.  Claim number on court claims registry (if known)_____   Filed on _____<br>                                                                                                MM / DD / YYYY | |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☒ No<br>☐ Yes.  Who made the earlier filing? _____ | |

**Part 2:    Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☐ No<br>☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor    **5014** |

| | |
|---|---|
| 7. **How much is this claim?**  **$179,886.63** | **Does this amount include interest or other charges?**<br><br>☐ No<br>☒ Yes Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001 (c)(2)(A). |

| | |
|---|---|
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>**Money Loaned** |

| | |
|---|---|
| 9. **Is all or part of the claim secured?** | ☐ No<br>☒ Yes.  The claim is secured by a lien on property.<br>    **Nature of property: 4525 Salmon Street Philadelphia, PA 19137**<br><br>    ☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.<br>    ☐ Motor vehicle<br>    ☐ Other. Describe: _____<br><br>    **Basis for perfection:    Recorded Mortgage**<br>    Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>    **Value of property:**    $_____<br>    **Amount of the claim that is secured:** $179,886.63<br><br>    **Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>    **Amount necessary to cure any default as of the date of the petition: $35,746.20**<br>    **Annual Interest Rate** (when case was filed) **4.1250%**<br><br>    ☒ Fixed<br>    ☐ Variable |

| | |
|---|---|
| 10. **Is this claim based on a lease?** | ☒  No<br><br>☐  Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____ |

| | |
|---|---|
| 11. **Is this claim subject to a right of setoff?** | ☒  No<br><br>☐  Yes. Identify the property: _____ |

| | | |
|---|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☒ No | |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check all that apply:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B) | |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(  ) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:    Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    <u>05/18/2023</u>
                    MM / DD / YYYY

/s/ Brian C. Nicholas Esquire Attorney ID#  317240

Signature

**Print the name of the person who is completing and signing this claim:**

| | | | |
|---|---|---|---|
| Name | **Brian C. Nicholas** | | |
| | First name | Middle name | Last name |
| Title | **Bankruptcy Attorney** | | |
| Company | **KML Law Group, P.C.** | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | **701 Market Street, Suite 5000** | | |
| | Number    Street | | |
| | **Philadelphia** | **PA** | **19106** |
| | City | State | ZIP Code |
| Contact phone | **201-549-5366** | Email | **bnicholas@kmllawgroup.com** |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Mark F Wilk | CHAPTER 13 |
| Debtor(s) | NO. 23-10789 AMC |

CERTIFICATE OF SERVICE

I, the undersigned, attorney for PHILADELPHIA FEDERAL CREDIT UNION do hereby certify that true and correct copies of the foregoing Proof of Claim have been served <u>May 18, 2023</u>, by electronic filing upon those listed below:

<u>Attorney for Debtor(s)</u>
OFFEN, DAVID M.
601 Walnut Street (VIA ECF)
Suite 160 West
Philadelphia, PA 19106

**Bankruptcy Trustee**
Kenneth E. West
Office of the Chapter 13 Standing Trustee (VIA ECF)
1234 Market Street - Suite 1813
Philadelphia, PA 19107

Date: <u>May 18, 2023</u>

<u>**/s/Brian C. Nicholas Esquire**</u>
Brian C. Nicholas Esquire
Attorney I.D. 317240
KML Law Group, P.C.
BNY Mellon Independence Center
701 Market Street, Suite 5000
Philadelphia, PA 19106
201-549-5366
bnicholas@kmllawgroup.com

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage As Of Date Of Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case Number: | 23-10789 AMC | Principal Balance | $147,808.53 | Principal & Interest | $16,336.32 | Principal & Interest | $583.44 |
| Debtor 1 | Mark F. Wilk | Interest Due | $13,135.64 | Pre-petition Fees Due | $2,040.20 | | |
| Debtor 2 | | MIP Amount | $0.00 | Escrow Def For Funds Advanced | $16,902.26 | Monthly Escrow | $284.69 |
| Last 4 Digits to Identify | 5014 | Fees / Costs Due | $2,040.20 | Projected Escrow Shortage | $467.42 | | |
| Creditor | PHILADELPHIA FEDERAL CREDIT | Escrow Def for Funds Advanced | $16,902.26 | | | Mortgage Insurance | $119.32 |
| Servicer | Cenlar FSB | Less Total Funds on Hand | $0.00 | Less Total Funds on Hand | $0.00 | | |
| Fixed Accrual, Daily Simple Interest or Other | Fixed | TOTAL DEBT | $179,886.63 | Total Prepetition Arrears | $35,746.20 | Total Monthly Payment | $987.45 |

PART 5: Loan Payment History From First Date of Default

| | Account Activity | | | | | How Funds Were Applied / Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| mm/dd/yyyy | + | + | +/- | from the list | calculated | + | + | +/- | +/- | +/- | calculated | calculated | calculated | calculated | calculated |
| Date | Contractual Payment Amount | Funds Received | Amount Incurred | Description | Contractual Due Date | Prin Int & Esc Past Due Balance | Amount to Principal | Amount to Interest | Amount to Escrow | Amount to Fees or Charges | Unapplied funds | Principal Balance | Accrued Interest Balance | Escrow Balance | Fees/Charges Balance | Unapplied Funds Balance |
| | | | | | | 0.00 | | | | | | | | 0.00 | 0.00 | 0.00 |
| 8/28/2019 | | 1,014.99 | | Monthly Payment Posted | 10/1/2019 | 0.00 | 112.36 | 471.08 | 431.55 | | | 151,087.11 | | 392.57 | 0.00 | 0.00 |
| 9/1/2019 | 1,014.99 | | | Monthly Payment Due | 10/1/2019 | 1,014.99 | | | | | | 151,087.11 | | 392.57 | 0.00 | 0.00 |
| 9/6/2019 | | | 119.32 | MIP Disb | 10/1/2019 | 1,014.99 | | | (119.32) | | | 151,087.11 | | 273.25 | 0.00 | 0.00 |
| 9/10/2019 | | 1,015.92 | | Monthly Payment Posted | 11/1/2019 | 0.00 | 112.75 | 470.69 | 432.48 | | | 150,974.36 | | 705.73 | 0.00 | 0.00 |
| 9/11/2019 | | | 20.00 | NSF Fee | 11/1/2019 | 0.00 | | | | 20.00 | | 150,974.36 | | 705.73 | 20.00 | 0.00 |
| 9/11/2019 | | (1,015.92) | | Monthly Payment Posted | 10/1/2019 | 1,015.92 | (112.75) | (470.69) | (432.48) | | | 151,087.11 | | 273.25 | 20.00 | 0.00 |
| 10/1/2019 | 1,015.92 | | | Monthly Payment Due | 10/1/2019 | 2,031.84 | | | | | | 151,087.11 | | 273.25 | 20.00 | 0.00 |
| 10/9/2019 | | | 119.32 | MIP Disb | 10/1/2019 | 2,031.84 | | | (119.32) | | | 151,087.11 | | 153.93 | 20.00 | 0.00 |
| 10/10/2019 | | 1,015.92 | | Monthly Payment Posted | 11/1/2019 | 1,015.92 | 112.75 | 470.69 | 432.48 | | | 150,974.36 | | 586.41 | 20.00 | 0.00 |
| 10/11/2019 | | | 20.00 | NSF Fee | 11/1/2019 | 1,015.92 | | | | 20.00 | | 150,974.36 | | 586.41 | 40.00 | 0.00 |
| 10/11/2019 | | (1,015.92) | | Monthly Payment Posted | 10/1/2019 | 2,031.84 | (112.75) | (470.69) | (432.48) | | | 151,087.11 | | 153.93 | 40.00 | 0.00 |
| 10/29/2019 | | 1,015.92 | | Monthly Payment Posted | 11/1/2019 | 1,015.92 | 112.75 | 470.69 | 432.48 | | | 150,974.36 | | 586.41 | 40.00 | 0.00 |
| 11/1/2019 | 1,015.92 | | | Monthly Payment Due | 11/1/2019 | 2,031.84 | | | | | | 150,974.36 | | 586.41 | 40.00 | 0.00 |
| 11/1/2019 | | (1,015.92) | | Monthly Payment Posted | 10/1/2019 | 3,047.76 | (112.75) | (470.69) | (432.48) | | | 151,087.11 | | 153.93 | 40.00 | 0.00 |
| 11/5/2019 | | 1,015.92 | | Monthly Payment Posted | 11/1/2019 | 2,031.84 | 112.75 | 470.69 | 432.48 | | | 150,974.36 | | 586.41 | 40.00 | 0.00 |
| 11/13/2019 | | | 119.32 | MIP Disb | 11/1/2019 | 2,031.84 | | | (119.32) | | | 150,974.36 | | 467.09 | 40.00 | 0.00 |
| 12/1/2019 | 987.45 | | | Monthly Payment Due | 11/1/2019 | 3,019.29 | | | | | | 150,974.36 | | 467.09 | 40.00 | 0.00 |
| 12/12/2019 | | | 119.32 | MIP Disb | 11/1/2019 | 3,019.29 | | | (119.32) | | | 150,974.36 | | 347.77 | 40.00 | 0.00 |
| 1/1/2020 | 987.45 | | | Monthly Payment Due | 11/1/2019 | 4,006.74 | | | | | | 150,974.36 | | 347.77 | 40.00 | 0.00 |
| 1/13/2020 | | | 119.32 | MIP Disb | 11/1/2019 | 4,006.74 | | | (119.32) | | | 150,974.36 | | 228.45 | 40.00 | 0.00 |
| 1/15/2020 | | 1,015.92 | | Monthly Payment Posted | 12/1/2019 | 2,990.82 | 113.14 | 470.30 | 432.48 | | | 150,861.22 | | 660.93 | 40.00 | 0.00 |
| 2/1/2020 | 987.45 | | | Monthly Payment Due | 12/1/2019 | 3,978.27 | | | | | | 150,861.22 | | 660.93 | 40.00 | 0.00 |
| 2/8/2020 | | | 1,781.75 | Prop Tax Disb | 12/1/2019 | 3,978.27 | | | (1,781.75) | | | 150,861.22 | | (1,120.82) | 40.00 | 0.00 |
| 2/13/2020 | | | 119.32 | MIP Disb | 12/1/2019 | 3,978.27 | | | (119.32) | | | 150,861.22 | | (1,240.14) | 40.00 | 0.00 |
| 2/25/2020 | | | 15.00 | Property Inspection | 12/1/2019 | 3,978.27 | | | | 15.00 | | 150,861.22 | | (1,240.14) | 55.00 | 0.00 |
| 3/1/2020 | 987.45 | | | Monthly Payment Due | 12/1/2019 | 4,965.72 | | | | | | 150,861.22 | | (1,240.14) | 55.00 | 0.00 |
| 3/10/2020 | | | 119.32 | MIP Disb | 12/1/2019 | 4,965.72 | | | (119.32) | | | 150,861.22 | | (1,359.46) | 55.00 | 0.00 |
| 3/16/2020 | | | 1,708.69 | Prop Tax Disb | 12/1/2019 | 4,965.72 | | | (1,708.69) | | | 150,861.22 | | (3,068.15) | 55.00 | 0.00 |
| 3/26/2020 | | | 15.00 | Property Inspection | 12/1/2019 | 4,965.72 | | | | 15.00 | | 150,861.22 | | (3,068.15) | 70.00 | 0.00 |
| 4/1/2020 | 987.45 | | | Monthly Payment Due | 12/1/2019 | 5,953.17 | | | | | | 150,861.22 | | (3,068.15) | 70.00 | 0.00 |
| 4/20/2020 | | | 119.32 | MIP Disb | 12/1/2019 | 5,953.17 | | | (119.32) | | | 150,861.22 | | (3,187.47) | 70.00 | 0.00 |
| 4/23/2020 | | | 15.00 | Property Inspection | 12/1/2019 | 5,953.17 | | | | 15.00 | | 150,861.22 | | (3,187.47) | 85.00 | 0.00 |
| 4/23/2020 | | 987.45 | | Monthly Payment Posted | 1/1/2020 | 4,965.72 | 113.53 | 469.91 | 404.01 | | | 150,747.69 | | (2,783.46) | 85.00 | 0.00 |
| 4/30/2020 | | 987.45 | | Monthly Payment Posted | 2/1/2020 | 3,978.27 | 113.92 | 469.52 | 404.01 | | | 150,633.77 | | (2,379.45) | 85.00 | 0.00 |
| 4/30/2020 | | 987.45 | | Monthly Payment Posted | 3/1/2020 | 2,990.82 | 114.31 | 469.13 | 404.01 | | | 150,519.46 | | (1,975.44) | 85.00 | 0.00 |
| 4/30/2020 | | 987.45 | | Monthly Payment Posted | 4/1/2020 | 2,003.37 | 114.70 | 468.74 | 404.01 | | | 150,404.76 | | (1,571.43) | 85.00 | 0.00 |
| 4/30/2020 | | 987.45 | | Monthly Payment Posted | 5/1/2020 | 1,015.92 | 115.10 | 468.34 | 404.01 | | | 150,289.66 | | (1,167.42) | 85.00 | 0.00 |
| 5/1/2020 | 987.45 | | | Monthly Payment Due | 5/1/2020 | 2,003.37 | | | | | | 150,289.66 | | (1,167.42) | 85.00 | 0.00 |
| 5/1/2020 | | 987.45 | | Monthly Payment Posted | 6/1/2020 | 1,015.92 | 115.49 | 467.95 | 404.01 | | | 150,174.17 | | (763.41) | 85.00 | 0.00 |
| 5/6/2020 | | 1,127.19 | | Monthly Payment Posted | 7/1/2020 | 0.00 | 115.89 | 467.55 | 543.75 | | | 150,058.28 | | (219.66) | 85.00 | 0.00 |
| 5/11/2020 | | | 119.32 | MIP Disb | 7/1/2020 | 0.00 | | | (119.32) | | | 150,058.28 | | (338.98) | 85.00 | 0.00 |

13

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage As Of Date Of Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case Number: | 23-10789 AMC | Principal Balance | $147,808.53 | Principal & Interest | $16,336.32 | Principal & Interest | $583.44 |
| Debtor 1 | Mark F. Wilk | Interest Due | $13,135.64 | Pre-petition Fees Due | $2,040.20 | | |
| Debtor 2 | | MIP Amount | $0.00 | Escrow Def For Funds Advanced | $16,902.26 | Monthly Escrow | $284.69 |
| Last 4 Digits to Identify | 5014 | Fees / Costs Due | $2,040.20 | Projected Escrow Shortage | $467.42 | | |
| Creditor | PHILADELPHIA FEDERAL CREDIT | Escrow Def for Funds Advanced | $16,902.26 | | | Mortgage Insurance | $119.32 |
| Servicer | Cenlar FSB | Less Total Funds on Hand | $0.00 | Less Total Funds on Hand | $0.00 | | |
| Fixed Accrual, Daily Simple Interest or Other | Fixed | TOTAL DEBT | $179,886.63 | Total Prepetition Arrears | $35,746.20 | Total Monthly Payment | $987.45 |

### PART 5: Loan Payment History From First Date of Default

| | Account Activity | | | | | How Funds Were Applied / Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| mm/dd/yyyy | + | + | +/- | from the list | calculated | + | + | +/- | +/- | +/- | | calculated | calculated | calculated | calculated | calculated |
| Date | Contractual Payment Amount | Funds Received | Amount Incurred | Description | Contractual Due Date | Prin Int & Esc Past Due Balance | Amount to Principal | Amount to Interest | Amount to Escrow | Amount to Fees or Charges | Unapplied funds | Principal Balance | Accrued Interest Balance | Escrow Balance | Fees/Charges Balance | Unapplied Funds Balance |
| 6/1/2020 | 1,127.19 | | | Monthly Payment Due | 7/1/2020 | 1,127.19 | | | | | | 150,058.28 | | (338.98) | 85.00 | 0.00 |
| 6/1/2020 | | 1,127.19 | | Monthly Payment Posted | 8/1/2020 | 0.00 | 116.29 | 467.15 | 543.75 | | | 149,941.99 | | 204.77 | 85.00 | 0.00 |
| 6/17/2020 | | | 119.32 | MIP Disb | 8/1/2020 | 0.00 | | | (119.32) | | | 149,941.99 | | 85.45 | 85.00 | 0.00 |
| 7/1/2020 | 1,127.19 | | | Monthly Payment Due | 8/1/2020 | 1,127.19 | | | | | | 149,941.99 | | 85.45 | 85.00 | 0.00 |
| 7/7/2020 | | 513.60 | | Payment to Principal | 8/1/2020 | 1,127.19 | 513.60 | | | | | 149,428.39 | | 85.45 | 85.00 | 0.00 |
| 7/17/2020 | | 564.00 | | Payment to Principal | 8/1/2020 | 1,127.19 | 564.00 | | | | | 148,864.39 | | 85.45 | 85.00 | 0.00 |
| 7/28/2020 | | | 119.32 | MIP Disb | 8/1/2020 | 1,127.19 | | | (119.32) | | | 148,864.39 | | (33.87) | 85.00 | 0.00 |
| 8/1/2020 | 1,127.19 | | | Monthly Payment Due | 8/1/2020 | 2,254.38 | | | | | | 148,864.39 | | (33.87) | 85.00 | 0.00 |
| 8/10/2020 | | 564.00 | | Payment to Principal | 8/1/2020 | 2,254.38 | 564.00 | | | | | 148,300.39 | | (33.87) | 85.00 | 0.00 |
| 8/12/2020 | | | 119.32 | MIP Disb | 8/1/2020 | 2,254.38 | | | (119.32) | | | 148,300.39 | | (153.19) | 85.00 | 0.00 |
| 9/1/2020 | 1,127.19 | | | Monthly Payment Due | 8/1/2020 | 3,381.57 | | | | | | 148,300.39 | | (153.19) | 85.00 | 0.00 |
| 9/28/2020 | | | 119.32 | MIP Disb | 8/1/2020 | 3,381.57 | | | (119.32) | | | 148,300.39 | | (272.51) | 85.00 | 0.00 |
| 10/1/2020 | 1,127.19 | | | Monthly Payment Due | 8/1/2020 | 4,508.76 | | | | | | 148,300.39 | | (272.51) | 85.00 | 0.00 |
| 10/6/2020 | | 1,127.19 | | Monthly Payment Posted | 9/1/2020 | 3,381.57 | 122.33 | 461.11 | 543.75 | | | 148,178.06 | | 271.24 | 85.00 | 0.00 |
| 10/27/2020 | | | 119.32 | MIP Disb | 9/1/2020 | 3,381.57 | | | (119.32) | | | 148,178.06 | | 151.92 | 85.00 | 0.00 |
| 11/1/2020 | 1,127.19 | | | Monthly Payment Due | 9/1/2020 | 4,508.76 | | | | | | 148,178.06 | | 151.92 | 85.00 | 0.00 |
| 11/10/2020 | | 1,127.19 | | Monthly Payment Posted | 10/1/2020 | 3,381.57 | 122.76 | 460.69 | 543.75 | | | 148,055.30 | | 695.67 | 85.00 | 0.00 |
| 11/16/2020 | | | 119.32 | MIP Disb | 10/1/2020 | 3,381.57 | | | (119.32) | | | 148,055.30 | | 576.35 | 85.00 | 0.00 |
| 11/17/2020 | | | 20.00 | NSF Fee | 10/1/2020 | 3,381.57 | | | | 20.00 | | 148,055.30 | | 576.35 | 105.00 | 0.00 |
| 11/24/2020 | | | 0.50 | FC Attorneys Costs | 10/1/2020 | 3,381.57 | | | | 0.50 | | 148,055.30 | | 576.35 | 105.50 | 0.00 |
| 12/1/2020 | 1,127.19 | | | Monthly Payment Due | 10/1/2020 | 4,508.76 | | | | | | 148,055.30 | | 576.35 | 105.50 | 0.00 |
| 12/29/2020 | | | 15.00 | Property Inspection | 10/1/2020 | 4,508.76 | | | | 15.00 | | 148,055.30 | | 576.35 | 120.50 | 0.00 |
| 12/29/2020 | | | 119.32 | MIP Disb | 10/1/2020 | 4,508.76 | | | (119.32) | | | 148,055.30 | | 457.03 | 120.50 | 0.00 |
| 1/1/2021 | 1,127.19 | | | Monthly Payment Due | 10/1/2020 | 5,635.95 | | | | | | 148,055.30 | | 457.03 | 120.50 | 0.00 |
| 1/11/2021 | | | 119.32 | MIP Disb | 10/1/2020 | 5,635.95 | | | (119.32) | | | 148,055.30 | | 337.71 | 120.50 | 0.00 |
| 1/22/2021 | | | 15.00 | Property Inspection | 10/1/2020 | 5,635.95 | | | | 15.00 | | 148,055.30 | | 337.71 | 135.50 | 0.00 |
| 2/1/2021 | 1,127.19 | | | Monthly Payment Due | 10/1/2020 | 6,763.14 | | | | | | 148,055.30 | | 337.71 | 135.50 | 0.00 |
| 2/19/2021 | | 1,127.19 | | Monthly Payment Posted | 11/1/2020 | 5,635.95 | 123.17 | 460.27 | 543.75 | | | 147,932.13 | | 881.46 | 135.50 | 0.00 |
| 2/23/2021 | | | 15.00 | Property Inspection | 11/1/2020 | 5,635.95 | | | | 15.00 | | 147,932.13 | | 881.46 | 150.50 | 0.00 |
| 2/24/2021 | | | 119.32 | MIP Disb | 11/1/2020 | 5,635.95 | | | (119.32) | | | 147,932.13 | | 762.14 | 150.50 | 0.00 |
| 3/1/2021 | 1,127.19 | | | Monthly Payment Due | 11/1/2020 | 6,763.14 | | | | | | 147,932.13 | | 762.14 | 150.50 | 0.00 |
| 3/2/2021 | | | 2,477.65 | Prop Tax Disb | 11/1/2020 | 6,763.14 | | | (2,477.65) | | | 147,932.13 | | (1,715.51) | 150.50 | 0.00 |
| 3/16/2021 | | | 2,053.91 | Prop Tax Disb | 11/1/2020 | 6,763.14 | | | (2,053.91) | | | 147,932.13 | | (3,769.42) | 150.50 | 0.00 |
| 3/25/2021 | | | 119.32 | MIP Disb | 11/1/2020 | 6,763.14 | | | (119.32) | | | 147,932.13 | | (3,888.74) | 150.50 | 0.00 |
| 3/29/2021 | | | 15.00 | Property Inspection | 11/1/2020 | 6,763.14 | | | | 15.00 | | 147,932.13 | | (3,888.74) | 165.50 | 0.00 |
| 4/1/2021 | 1,127.19 | | | Monthly Payment Due | 11/1/2020 | 7,890.33 | | | | | | 147,932.13 | | (3,888.74) | 165.50 | 0.00 |
| 4/9/2021 | | | 119.32 | MIP Disb | 11/1/2020 | 7,890.33 | | | (119.32) | | | 147,932.13 | | (4,008.06) | 165.50 | 0.00 |
| 4/27/2021 | | | 15.00 | Property Inspection | 11/1/2020 | 7,890.33 | | | | 15.00 | | 147,932.13 | | (4,008.06) | 180.50 | 0.00 |
| 4/28/2021 | | | 139.12 | MIP Disb | 11/1/2020 | 7,890.33 | | | (139.12) | | | 147,932.13 | | (4,147.18) | 180.50 | 0.00 |
| 5/1/2021 | 1,127.19 | | | Monthly Payment Due | 11/1/2020 | 9,017.52 | | | | | | 147,932.13 | | (4,147.18) | 180.50 | 0.00 |
| 5/13/2021 | | | 119.32 | MIP Disb | 11/1/2020 | 9,017.52 | | | (119.32) | | | 147,932.13 | | (4,266.50) | 180.50 | 0.00 |
| 5/28/2021 | | | 15.00 | Property Inspection | 11/1/2020 | 9,017.52 | | | | 15.00 | | 147,932.13 | | (4,266.50) | 195.50 | 0.00 |

WI11426488

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage As Of Date Of Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case Number: | 23-10789 AMC | Principal Balance | $147,808.53 | Principal & Interest | $16,336.32 | Principal & Interest | $583.44 |
| Debtor 1 | Mark F. Wilk | Interest Due | $13,135.64 | Pre-petition Fees Due | $2,040.20 | | |
| Debtor 2 | | MIP Amount | $0.00 | Escrow Def For Funds Advanced | $16,902.26 | Monthly Escrow | $284.69 |
| Last 4 Digits to Identify | 5014 | Fees / Costs Due | $2,040.20 | Projected Escrow Shortage | $467.42 | | |
| Creditor | PHILADELPHIA FEDERAL CREDIT | Escrow Def for Funds Advanced | $16,902.26 | | | Mortgage Insurance | $119.32 |
| Servicer | Cenlar FSB | Less Total Funds on Hand | $0.00 | Less Total Funds on Hand | $0.00 | | |
| Fixed Accrual, Daily Simple Interest or Other | Fixed | TOTAL DEBT | $179,886.63 | Total Prepetition Arrears | $35,746.20 | Total Monthly Payment | $987.45 |

| PART 5: Loan Payment History From First Date of Default | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Account Activity | | | | | How Funds Were Applied / Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | | |
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| mm/dd/yyyy | + | + | +/- | from the list | calculated | + | + | +/- | +/- | +/- | | calculated | calculated | calculated | calculated | calculated |
| Date | Contractual Payment Amount | Funds Received | Amount Incurred | Description | Contractual Due Date | Prin Int & Esc Past Due Balance | Amount to Principal | Amount to Interest | Amount to Escrow | Amount to Fees or Charges | Unapplied funds | Principal Balance | Accrued Interest Balance | Escrow Balance | Fees/Charges Balance | Unapplied Funds Balance |
| 6/1/2021 | 1,128.87 | | | Monthly Payment Due | 11/1/2020 | 10,146.39 | | | | | | 147,932.13 | | (4,266.50) | 195.50 | 0.00 |
| 6/23/2021 | | | 119.32 | MIP Disb | 11/1/2020 | 10,146.39 | | | (119.32) | | | 147,932.13 | | (4,385.82) | 195.50 | 0.00 |
| 6/29/2021 | | | 15.00 | Property Inspection | 11/1/2020 | 10,146.39 | | | | 15.00 | | 147,932.13 | | (4,385.82) | 210.50 | 0.00 |
| 7/1/2021 | 1,128.87 | | | Monthly Payment Due | 11/1/2020 | 11,275.26 | | | | | | 147,932.13 | | (4,385.82) | 210.50 | 0.00 |
| 7/13/2021 | | | 119.32 | MIP Disb | 11/1/2020 | 11,275.26 | | | (119.32) | | | 147,932.13 | | (4,505.14) | 210.50 | 0.00 |
| 7/27/2021 | | | 15.00 | Property Inspection | 11/1/2020 | 11,275.26 | | | | 15.00 | | 147,932.13 | | (4,505.14) | 225.50 | 0.00 |
| 8/1/2021 | 1,128.87 | | | Monthly Payment Due | 11/1/2020 | 12,404.13 | | | | | | 147,932.13 | | (4,505.14) | 225.50 | 0.00 |
| 8/13/2021 | | | 119.32 | MIP Disb | 11/1/2020 | 12,404.13 | | | (119.32) | | | 147,932.13 | | (4,624.46) | 225.50 | 0.00 |
| 8/27/2021 | | | 15.00 | Property Inspection | 11/1/2020 | 12,404.13 | | | | 15.00 | | 147,932.13 | | (4,624.46) | 240.50 | 0.00 |
| 9/1/2021 | 1,128.87 | | | Monthly Payment Due | 11/1/2020 | 13,533.00 | | | | | | 147,932.13 | | (4,624.46) | 240.50 | 0.00 |
| 9/13/2021 | | | 119.32 | MIP Disb | 11/1/2020 | 13,533.00 | | | (119.32) | | | 147,932.13 | | (4,743.78) | 240.50 | 0.00 |
| 9/24/2021 | | | 15.00 | Property Inspection | 11/1/2020 | 13,533.00 | | | | 15.00 | | 147,932.13 | | (4,743.78) | 255.50 | 0.00 |
| 10/1/2021 | 1,128.87 | | | Monthly Payment Due | 11/1/2020 | 14,661.87 | | | | | | 147,932.13 | | (4,743.78) | 255.50 | 0.00 |
| 10/15/2021 | | | 119.32 | MIP Disb | 11/1/2020 | 14,661.87 | | | (119.32) | | | 147,932.13 | | (4,863.10) | 255.50 | 0.00 |
| 10/28/2021 | | | 15.00 | Property Inspection | 11/1/2020 | 14,661.87 | | | | 15.00 | | 147,932.13 | | (4,863.10) | 270.50 | 0.00 |
| 11/1/2021 | 1,128.87 | | | Monthly Payment Due | 11/1/2020 | 15,790.74 | | | | | | 147,932.13 | | (4,863.10) | 270.50 | 0.00 |
| 11/17/2021 | | | 119.32 | MIP Disb | 11/1/2020 | 15,790.74 | | | (119.32) | | | 147,932.13 | | (4,982.42) | 270.50 | 0.00 |
| 11/26/2021 | | | 15.00 | Property Inspection | 11/1/2020 | 15,790.74 | | | | 15.00 | | 147,932.13 | | (4,982.42) | 285.50 | 0.00 |
| 12/1/2021 | 1,128.87 | | | Monthly Payment Due | 11/1/2020 | 16,919.61 | | | | | | 147,932.13 | | (4,982.42) | 285.50 | 0.00 |
| 12/7/2021 | | 1,127.19 | | Monthly Payment Posted | 12/1/2020 | 15,792.42 | 123.60 | 459.84 | 543.75 | | | 147,808.53 | | (4,438.67) | 285.50 | 0.00 |
| 12/15/2021 | | | 119.32 | MIP Disb | 12/1/2020 | 15,792.42 | | | (119.32) | | | 147,808.53 | | (4,557.99) | 285.50 | 0.00 |



**PHILADELPHIA**
**FEDERAL CREDIT UNION**
PO Box 77404
visit us at pfcu.com
Ewing, NJ 08628

# ANNUAL ESCROW ACCOUNT
## DISCLOSURE STATEMENT

| Statement Date | 03/20/2023 |
|---|---|
| Loan Number | |

MARK FRANCIS WILK
4525 SALMON ST
PHILADELPHIA PA 19137-2010

## Summary

As you know, we are required to maintain an escrow account which is used to pay your real estate taxes and/or insurance premiums. This account must be analyzed annually to determine whether enough funds are being collected monthly, and whether the account has a shortage or surplus based on the anticipated activity.

### Annual Escrow Review

| Escrow Item | Expected to Pay | Change | Now Expect to Pay |
|---|---|---|---|
| Insurance | $2,218.13 | – | $0.00 |
| Taxes | $2,477.65 | + | $3,307.73 |
| Taxes | | | 3,307.73 |
| Mortgage Ins | $1,431.84 | | $1,431.84 |
| Bills Due Outside Upcoming Year | $0.00 | + | $2,301.25 |
| **Total Disbursements** | **$6,127.62** | **+** | **$7,040.82** |

### Monthly Payment Comparison

| Payment Itemization | Current 12/01/2020 | New 04/01/2023 |
|---|---|---|
| Principal and Interest | $583.44 | $583.44 |
| Escrow Deposit | $543.75 | $586.73 |
| **Total Payment** | **$1,127.19** | **$1,170.17** |

## Account History

This section is the actual activity that occurred from 04/22 through 07/22. It represents the period of time between the last analysis statement date and the last analysis effective date. Over this period, an additional $0.00 was deposited into your escrow account for interest on escrow.

| MONTH | Actual Escrow PAYMENTS | Actual Escrow DISBURSEMENTS | Actual Escrow DESCRIPTION | BALANCE |
|---|---|---|---|---|
| | | | BEGINNING BALANCE | -$9,861.44 |
| APR 2022 | | 119.32 | PMI | -9,980.76 |
| MAY 2022 | | 119.32 | PMI | -10,100.08 |
| JUN 2022 | | 119.32 | PMI | -10,219.40 |
| JUL 2022 | | 119.32 | PMI | -10,338.72 |

The following statement of activity in your escrow account from 08/22 through 03/23 displays actual activity as it occurred in your escrow account during that period. Your monthly mortgage payment was $1,127.19 and $543.75 went into your escrow account. If you received Account Projections with a prior analysis, they are included again here for comparison.

| | PAYMENTS | | DISBURSEMENTS | | | ESCROW BALANCE | |
|---|---|---|---|---|---|---|---|
| Date | Projected | Actual | Projected | Actual | Description | Projected | Actual |
| | | | | | BEGINNING BALANCE | $1,956.62 | -$10,338.72 |
| AUG 2022 | 510.63 | * | 119.32 | * | PMI | 2,347.93 | -10,338.72 |
| AUG 2022 | | | | 119.32 * | PMI | 2,347.93 | -10,458.04 |
| SEP 2022 | 510.63 | * | 119.32 | * | PMI | 2,739.24 | -10,458.04 |
| SEP 2022 | | | | 119.32 * | PMI | 2,739.24 | -10,577.36 |
| OCT 2022 | 510.63 | * | 119.32 | * | PMI | 3,130.55 | -10,577.36 |
| OCT 2022 | | | | 119.32 * | PMI | 3,130.55 | -10,696.68 |

CONTINUED ON REVERSE SIDE





**YOUR ANNUAL
ESCROW ACCOUNT
STATEMENT**

PAGE
2/4

LOAN NUMBER

CONTINUATION

| Date | PAYMENTS Projected | Actual | DISBURSEMENTS Projected | Actual | Description | ESCROW BALANCE Projected | Actual |
|---|---|---|---|---|---|---|---|
| NOV 2022 | 510.63 | * | 119.32 | * | PMI | 3,521.86 | -10,696.68 |
| NOV 2022 | | | | 119.32 * | PMI | 3,521.86 | -10,816.00 |
| DEC 2022 | 510.63 | * | 119.32 | * | PMI | 3,913.17 | -10,816.00 |
| DEC 2022 | | | | 119.32 * | PMI | 3,913.17 | -10,935.32 |
| JAN 2023 | 510.63 | * | 119.32 | * | PMI | 4,304.48 | -10,935.32 |
| JAN 2023 | | | | 119.32 * | PMI | 4,304.48 | -11,054.64 |
| FEB 2023 | 510.63 | * | 119.32 | * | PMI | 4,695.79 | -11,054.64 |
| FEB 2023 | | | | 119.32 * | PMI | 4,695.79 | -11,173.96 |
| MAR 2023 (estimate) | 510.63 | 16,005.10 * | 119.32 | * | PMI | 5,087.10 | 4,831.14 |
| MAR 2023 | | | 2,477.65 | 3,307.73 * | CNTY,CTY,SCH | 2,609.45 | 1,523.41 |
| MAR 2023 | | | | 119.32 * | PMI | 2,609.45 | 1,404.09 |
| MAR 2023 | | | | 2,301.25 * | HAZARD INS | 2,609.45 | -897.16 |
| APR 2023 | 510.63 | * | 119.32 | * | PMI | 3,000.76 | |
| APR 2023 | | | 2,218.13 | * | HAZARD INS | 782.63 | |
| MAY 2023 | 510.63 | * | 119.32 | * | PMI | 1,173.94 | |
| JUN 2023 | 510.63 | * | 119.32 | * | PMI | 1,565.25 | |
| JUL 2023 | 510.63 | * | 119.32 | * | PMI | 1,956.56 | |
| Totals | $6,127.56 | $16,005.10 | $6,127.62 | $6,563.54 | | | |

An asterisk (*) beside an amount indicates a difference from projected activity either in the amount or the date. Please note since mortgage insurance is paid monthly on the annual renewal date of the premium and PMI is paid monthly for the prior month's premium, additional asterisks report in the Account History for these items, if applicable.

The "estimate" under any of the dates indicates that the payment or disbursement has not yet occurred, but is estimated to occur as shown.

Last year we anticipated that Disbursements would be made from your Escrow Account during the period equaling $6,127.62. Under Federal Law, your lowest monthly balance should not have exceeded $543.99, or 1/6th of total anticipated payments from the account, unless your loan contract or State law specifies a lower amount.

Under your loan contract and State law your lowest monthly balance should not have exceeded $782.63.

 **PHILADELPHIA**
**FEDERAL CREDIT UNION**
visit us at pfcu.com

**NCUA**

**YOUR ANNUAL
ESCROW ACCOUNT
STATEMENT**

PAGE
3/4

LOAN NUMBER

---

CONTINUATION

---

## Account Projections

The following estimate of activity in your escrow account from 04/23 through 03/24 is provided for your information. All payments we anticipate receiving as well as disbursements we anticipate making on your behalf are included, along with the Projected Contractual and Post-Petition Escrow Account Balance, derived by carrying forward your current actual escrow balance. The Required Escrow Account Balance displays the amount actually required to be on hand as specified by Federal law, State law and your loan documents, and may include a cushion of up to 1/6th of your Annual Disbursements. Please retain this statement for comparison with the actual activity in your account at the end of the next escrow account computation year. The below projection includes funds applied during your active bankruptcy case.

| DATE | ANTICIPATED AMOUNT TO ESCROW | ANTICIPATED AMOUNT FROM ESCROW | DESCRIPTION | PROJECTED CONTRACTUAL ESCROW BALANCE | PROJECTED POST-PETITION ESCROW BALANCE | REQUIRED ESCROW BALANCE |
|---|---|---|---|---|---|---|
| | | | BEGINNING BALANCE | -$897.16 | $0.00 | $467.42 |
| APR 2023 | 586.73 | 119.32 | PMI | -429.75 | 467.41 | 934.83 |
| MAY 2023 | 586.73 | 119.32 | PMI | 37.66 | 934.82 | 1,402.24 |
| JUN 2023 | 586.73 | 119.32 | PMI | 505.07 | 1,402.23 | 1,869.65 |
| JUL 2023 | 586.73 | 119.32 | PMI | 972.48 | 1,869.64 | 2,337.06 |
| AUG 2023 | 586.73 | 119.32 | PMI | 1,439.89 | 2,337.05 | 2,804.47 |
| SEP 2023 | 586.73 | 119.32 | PMI | 1,907.30 | 2,804.46 | 3,271.88 |
| OCT 2023 | 586.73 | 119.32 | PMI | 2,374.71 | 3,271.87 | 3,739.29 |
| NOV 2023 | 586.73 | 119.32 | PMI | 2,842.12 | 3,739.28 | 4,206.70 |
| DEC 2023 | 586.73 | 119.32 | PMI | 3,309.53 | 4,206.69 | 4,674.11 |
| JAN 2024 | 586.73 | 119.32 | PMI | 3,776.94 | 4,674.10 | 5,141.52 |
| FEB 2024 | 586.73 | 119.32 | PMI | 4,244.35 | 5,141.51 | 5,608.93 |
| MAR 2024 | 586.73 | 119.32 | PMI | 4,711.76 | 5,608.92 | 6,076.34 |
| MAR 2024 | | 3,307.73 | CNTY,CTY,S | 1,404.03 | 2,301.19 | 2,768.61 |
| TOTALS | $7,040.76 | $4,739.57 | | | | |

**Your Projected Escrow Account Balance as of 03/31/23 is -$897.16. Your Required Beginning Escrow Balance according to this analysis should be $467.42.**
Once during this period, your Required Escrow Account Balance should be reduced to $934.83 as shown in April.  This amount represents the cushion selected by us as allowed by your loan contract, Federal and State law.

## New Loan Payment

| Your new payment consists of: | Principal & Interest (P & I) | $583.44 |
|---|---|---|
| | Escrow Deposit | $586.73 |
| **NEW LOAN PAYMENT** | Beginning on April 01, 2023 | **$1,170.17** |

## Member Service

 www.pfcu.com

 **Live Chat:** Find all your loan information online. Still have questions? Use Live Chat on the website to speak with one of our representatives.

 **Correspondence**
PAYMENT PROCESSING CENTER
PO BOX 11733
NEWARK, NJ 07101-4733

 **Telephone**
866-370-7328

We accept telecommunications relay service calls.





**PHILADELPHIA**
FEDERAL CREDIT UNION
visit us at pfcu.com

**YOUR ANNUAL
ESCROW ACCOUNT
STATEMENT**

PAGE
4/4

LOAN NUMBER

## Important Information

**AUTOPAY HOMEOWNERS**
If you're enrolled in Autopay, any additional principal deductions you have previously authorized are not included in the above listed new payment amount. However, until we are otherwise advised, the authorized additional principal amount will continue to be withdrawn from your account.

**ADJUSTABLE RATE MORTGAGE CUSTOMERS**
If your loan has an adjustable interest rate, your monthly principal and interest payment may change prior to your next Escrow Analysis.

**INSURANCE RENEWAL/CHANGING INSURANCE COMPANIES**
Upload proof of insurance coverage at www.mycoverageinfo.com/Cen300. Your insurance documents can also be sent to us via the following methods: Email – Cen300@mycoverageinfo.com; Mail – PO Box 202028, Florence, SC 29502-2028; and Fax – 843-413-7133

**TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED OR IS SUBJECT TO THE AUTOMATIC STAY IN A BANKRUPTCY PROCEEDING, THIS LOAN STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO COLLECT INDEBTEDNESS AS YOUR PERSONAL OBLIGATION.**

**ANNUAL PMI DISCLOSURE**
**Private Mortgage Insurance:** Your mortgage loan requires private mortgage insurance ("PMI"). PMI protects lenders and others against financial loss when borrowers default. Charges for the insurance are added to your loan payments. Under certain circumstances, federal law gives you the right to cancel PMI or requires that PMI automatically terminate. Cancellation or termination of PMI does not affect any obligation you may have to maintain other types of insurance.

**Borrower Requested Cancellation of PMI:** Under the Homeowners Protection Act of 1998, if your loan closed **on or after** July 29, 1999 as a single-family primary residence, you have the right to request that PMI be cancelled on or after either of these dates: (1) the date the principal balance of your loan is first scheduled to reach 80% of the original value of the property or (2) the date the principal balance actually reaches 80% of the original value of the property. PMI will only be cancelled on these dates if (1) you submit a written request for cancellation; (2) you have a good payment history; and (3) we receive, if requested and at your expense, evidence that the value of the property has not declined below its original value and certification that there are no subordinate liens on the property. A "good payment history" means no payments 60 or more days past due within two years and no payments 30 or more days past due within one year of the cancellation date. "Original value" means the lesser of the contract sales price of the property or the appraised value of the property at the time the loan was closed.

**Automatic Termination of PMI:** Under the Homeowners Protection Act of 1998, if your loan closed **on or after** July 29, 1999 as a singlefamily
primary residence and if you are current on your loan payments, PMI will automatically terminate on the date the principal balance of your loan is first scheduled to reach 78% of the original value of the property. If you are not current on your loan payments as of that date, PMI will automatically terminate when you thereafter become current on your payments. In any event, PMI will not be required on your mortgage loan beyond the date that is the midpoint of the amortization period for the loan if you are current on your payments on that date.

**If your loan closed before July 29, 1999 or if it is not a single-family primary residence or second home:** The conditions for cancelling mortgage insurance for mortgages closed **before** July 29, 1999 are not statutory under federal law, they may be changed at any time (unless otherwise required by state law). To determine if you can cancel the PMI on your loan or for further information about PMI Cancellation, contact us at P.O. Box 77404, Ewing, NJ 08628 or call 866-300-8365.

LOAN #: ███████

# NOTE

November 10, 2017          Southampton,          Pennsylvania
[Date]                           [City]                  [State]

4525 Salmon Street, Philadelphia, PA 19137
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S ████████ (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Philadelphia Federal Credit Union, a Federal Credit Union.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **4.125 %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any Survival Event as defined in this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **January 1, 2018.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **December 1, 2047,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date." I will continue to pay those amounts both before and after any Survival Event as defined in this Note, until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.

I will make my monthly payments at **12800 Townsend Rd.**
**Philadelphia     , PA 19154**

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S ████████

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Initials: _MPW_

LOAN #:

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   **15**   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000 %**   of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees. I will pay the Note Holder back for those expenses paid by the Note Holder both before and after any Survival Event as defined in this Note.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. EFFECT OF SURVIVAL EVENTS

For purposes of this Note, "Survival Event" is defined as follows:

(a) any default described in Section 6(B) of this Note;

(b) Noteholder requiring me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount under Section 6(C) of this Note;

(c) Noteholder requiring immediate payment in full of all sums secured by the Security Instrument;

(d) the Maturity Date as defined in this Note;

Initials: _MPW_

PENNSYLVANIA FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3239 2/16
Ellie Mae, Inc.                                              Page 2 of 3

LOAN # ███████

(e)  the entry of any judgment against me under this Note; and
(f)  the entry of any judgment under the Security Instrument.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____  (Seal)
MARK FRANCIS WILK

Lender: Philadelphia Federal Credit Union
NMLS ID: ███████
Loan Originator: ████ Ellie Vasquez
NMLS ID: ███████

Pay to the order of

_____
Without recourse
Philadelphia Federal Credit Union

_____
Dennis Caniz
Chief Financial Officer

[Sign Original Only]
Initials: MFW

PENNSYLVANIA FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3239 2/16
Ellie Mae, Inc.
Page 3 of 3



**After Recording Return To:**
RUTH RUHL, P.C.
Attn: Recording Department
12700 Park Central Drive, Suite 850
Dallas, Texas 75251

**Prepared By:**
RUTH RUHL, P.C.
12700 Park Central Drive, Suite 850
~~Dallas, TX 75251~~

[Space Above This Line For Recording Data]

# LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this   17th   day of   July, 2019                          ,
between  Mark Francis Wilk, unmarried man

                                                                                                                ("Borrower")
and  Philadelphia Federal Credit Union

                                                                                                                ("Lender"),
amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated
November 10th, 2017, recorded November 20th, 2017   , and recorded in Book/Liber N/A          , Page N/A         ,
Instrument No. 53293657            , of the Official      Records of Philadelphia         County, Pennsylvania ,
and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and
personal property described in the Security Instrument and defined therein as the "Property," located at
4525 Salmon Street, Philadelphia, Pennsylvania 19137                                                          .
Said Security Instrument was assigned as follows:
       From N/A

N/A                                                                                                    , to

by assignment dated  N/A               , and recorded on  N/A              of the Official Records of
Philadelphia         County, State of Pennsylvania in Book/Liber  N/A            , Page N/A              ,
Instrument No.  N/A                    .

Original Loan Amount: $149,150.00

---

**PENNSYLVANIA LOAN MODIFICATION AGREEMENT**
(FNMA Modified Form 3179 1/01 (rev. 04/14))                                              Page 1 of 6

From N/A
to N/A                                                        , by assignment dated N/A                    ,
and recorded on N/A              of the Official Records of Philadelphia      County, State of Pennsylvania
in Liber or Book  N/A        , Page N/A      , Instrument No.  N/A              .

the real property described being set forth as follows:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.       As of September 1st, 2019, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $151,199.46 consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.       $14,159.46 of the New Principal Balance shall be deferred ("the Deferred Principal Balance") and Borrower will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $137,040.00. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of 4.125%, from August 1st, 2019. Borrower promises to make monthly payments of principal and interest of U.S. $583.44, beginning on the 1st day of September, 2019, and continuing thereafter on the same day of each succeeding month until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The yearly rate of 4.125% will remain in effect until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The new Maturity Date will be August 1st, 2059.

3.       Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of: (i) the date Borrower sells or transfers an interest in the Property, (ii) the date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

4.       If Borrower makes a partial prepayment of Principal, Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

5.       If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.
         If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

6.       Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the specified date in paragraph No. 1 above:
         (a)     all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

(b)      all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

7.      Borrower understands and agrees that:

(a)      All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)      All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)      Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)      All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)      Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)      Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower  information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's  loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging☐.

8.      If applicable, by this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligations to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

9.      Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such

time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund Borrower any Funds held by Lender.

8-1-19

_____
Date

_____ _(Seal)_
Mark Francis Wilk              –Borrower

_____
Date

_____ _(Seal)_
                              –Borrower

_____
Date

_____ _(Seal)_
                              –Borrower

_____
Date

_____ _(Seal)_
                              –Borrower

## BORROWER ACKNOWLEDGMENT

State of   New Jersey           §
County of  Burlington           §
                                §

On this, the _1_ day of _August_ _2019_, before me _Melissa Ryan_ ,
the undersigned officer, personally appeared Mark Francis Wilk

known to me (or satisfactorily proven) to be the person whose name(s) is/are  subscribed to the within instrument,
and acknowledged that he/she/they executed the same for the purposes therein contained.
       In witness whereof, I hereunto set my hand and official seal.

(Seal)

MELISSA RYAN
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires 1/9/2024

_____
Notary Signature

_Notary Public_
Title of Officer

ACKNOWLEDGMENT (PENNSYLVANIA)                                    Page 5 of 6

Philadelphia Federal Credit Union
—Lender

8-9-19
-Date

By: _____

Its: _____
Francine Bryant
2nd Vice President

## LENDER ACKNOWLEDGMENT

State of nJ §
County of mercer §
§

On this, the 9 day of Aug , 2019 before me Atia Kinard
the undersigned officer, personally appeared FRANCINE BRYANT who acknowledged
himself/herself to be the 2nd Vice President of Philadelphia Federal Credit Union

a entity, and that he/she as such FRANCINE BRYANT being authorized to do so, executed the
foregoing instrument for the purposes therein contained by signing the name of said entity by himself/herself as
2nd Vice President .
In witness whereof, I hereunto set my hand and official seal.

(Seal)

NOTARY PUBLIC OF NEW JERSEY
ATIA KINARD
My Commission Expires October 28, 2021
ID# 50048570

_____
Notary Signature

_____
Notary Public
Title of Officer

"I, FRANCINE BRYANT , do hereby certify that the correct address of the within named Mortgagee is
12800 Townsend Road, Philadelphia, Pennsylvania 19154. Witness my hand this 9 day of
Aug 2019 .
Signed: _____
By: _____
Francine Bryant
2nd Vice/President

ACKNOWLEDGMENT (PENNSYLVANIA)                                                    Page 6 of 6

# NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice:** The undersigned hereby represents and warrants that I/we have each received and read a copy of this Notice on or before the execution of the "Loan Agreement." "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____          _____
Mark Francis Wilk                        -Borrower                                                -Borrower

_____          _____
                                         -Borrower                                                -Borrower

NOTICE OF NO ORAL AGREEMENTS (MULTISTATE)                                                    Page 1 of 1

# CORRECTION AGREEMENT

**Borrower(s):** Mark Francis Wilk

**Property:** 4525 Salmon Street, Philadelphia, Pennsylvania 19137

Words used in this Agreement are defined below. Words in the singular mean and include the plural and vice versa.

"Borrower" is Mark Francis Wilk.

"Lender" is Philadelphia Federal Credit Union

, and its successors or assigns.
"Loan" means the debt evidenced by the Note and all sums due under the Security Instrument.
"Note" means the promissory note(s) signed by Borrower in favor of Lender or any assignee of Lender.
"Security Instrument" means the Deed of Trust/Mortgage/Security Deed, signed by Borrower in favor of Lender, securing payment of the Note.

AGREEMENT TO CORRECT OR PROVIDE ADDITIONAL DOCUMENTATION OR FEES: In consideration of the Loan Modification Agreement offered by Lender in the amount of $151,199.46 , which modifies the Note and Security Instrument, and regardless of the reason for any loss, misplacement, omission, misstatement or inaccuracy in any Loan documentation, Borrower agrees as follows: If any document is lost, misplaced, omitted, misstated or inaccurately reflects the true and correct terms and conditions of the Loan, upon request of Lender (including any assignee of Lender), Borrower will comply with Lender's request to execute, acknowledge, initial and/or deliver to Lender any documentation Lender deems necessary to replace and/or correct the lost, misplaced, omitted, misstated or inaccurate document(s). All documents Lender requests of Borrower shall be referred to as "Requested Documents." Borrower agrees to deliver the Requested Documents within ten (10) days after receipt by Borrower of a written request for such replacement. Borrower does hereby agree to comply with Lender's request to assure that the Loan documentation executed this date will enable Lender to seek insurance or guaranty from the Department of Housing and Urban Development (HUD) or Department of Veteran's Affairs (VA), if applicable, or to conform with and be acceptable to the Federal National Mortgage Association (FNMA), Federal Home Loan Mortgage Corporation (FHLMC), Government National Mortgage Association (GNMA), or any other investor.

REQUEST BY LENDER: Any request under this Agreement may be made by the Lender (including assignees and persons acting on behalf of the Lender) and shall be prima facie evidence of the necessity for same. A written statement addressed to Borrower at the address indicated in the Loan documentation shall be considered conclusive evidence of the necessity for Requested Documents.

BORROWER LIABILITY: If Borrower fails or refuses to execute, acknowledge, initial or deliver the Requested Documents to Lender within ten (10) days after being requested to do so by Lender, Borrower understands that Lender is relying on the representations contained herein and agrees to be liable for any and all loss or damage which Lender reasonably sustains thereby including, but not limited to, all reasonable attorneys' fees and costs incurred by Lender.

---

CORRECTION AGREEMENT

This Agreement shall inure to the benefit of Lender's successors and assigns and be binding upon the heirs, devises, personal representatives, successors and assigns of Borrower.

ACKNOWLEDGMENT OF RECEIPT

**I hereby acknowledge receipt of this Correction Agreement and further acknowledge that I understand its provisions. Words used in this Correction Agreement mean and include the plural and vice versa.**

Mark Francis Wilk                     -Borrower (Date)                                                      -Borrower (Date)


                                      -Borrower (Date)                                                      -Borrower (Date)

# ATTORNEY SELECTION NOTICE

By signing below, it is understood and agreed that you may hire a lawyer or attorney to advise you regarding this transaction and its consequences.

SELLER:                                          BORROWER:

_____                    _____
N/A Modification                                 Mark Francis Wilk          8-1-19
                        (Date)                                           (Date)
                                                 Mark Francis Wilk

_____                    _____
N/A Modification                                                         (Date)
                        (Date)

_____                    _____
                        (Date)                                           (Date)

_____                    _____
                        (Date)                                           (Date)

ATTORNEY SELECTION NOTICE -MULTISTATE                                Page 1 of 1

Exhibit "A"

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, described according to a survey and plan thereof made by J. H. Webster, Jr., Surveyor and Regulator of the 10th District on the 6th day of October A.D. 1915 as follows, to wit.

SITUATE on the Southeasterly side of Salmon Street (40 feet wide) at the distance of 232 feet 1/8 of an inch Northeastwardly from the Northeasterly side of Lefevre Street (60 feet wide) in the 45th Ward of the City of Philadelphia.

CONTAINING in front or breadth on said Salmon Street 14 feet and 1/2 of an inch and extending of that width in length or depth Southeastwardly between lines parallel with Casimir Street (40 feet wide), through the centers of the party walls between this and the premises to the Southwest and Northeastwardly thereof, (erroneously omitted said course from Deed Document No.51826453 ; Seventy-six feet to a certain Four feet wide alley extending Northeastwardly) into said Casimir Street.

Being No. 4525 Salmon Street.

TOGETHER with the free and common use, right, liberty and privilege of the said alley as and for a passageway and watercourse at all times hereafter, forever

Colony Abstract Co. Inc.
283 Second Street Pike, Suite 190
Southampton, PA 18966

eRecorded in Philadelphia PA   Doc Id: ▮▮▮
11/20/2017 08:33 AM    Page 1 of 23    Rec Fee: $222.00
Receipt#: ▮▮▮
Records Department    Doc Code: M



When recorded, return to:
**Colony Abstract**
**283 Second Street Pike suite 190**
**Southampton, PA 18966**

This document was prepared by:
**Maria Soda**
**Philadelphia Federal Credit Union**
**12800 Townsend Rd.**
**Philadelphia   , PA 19154**
**215-934-4054**

**APN #:** ▮▮▮▮▮

**Title Order No.:** ▮▮▮▮▮

**LOAN #:** ▮▮▮▮▮

———————— [Space Above This Line For Recording Data] ————————

## MORTGAGE

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are
defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words
used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated
**November 10, 2017,**           together with all Riders to this document.

(B) **"Borrower"** is    **MARK FRANCIS WILK, UNMARRIED MAN.**

Borrower is the mortgagor under this Security Instrument.

Initials: _M P W_

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.                    Page 1 of 22                    PAUDEDL   0416
PAUDEDL (CLS)
11/08/2017 06:51 AM PST



(C) "Lender" is   **Philadelphia Federal Credit Union.**

**LOAN** ▮

Lender is  **a Federal Credit Union,**         organized and existing under the
laws of **The United States of America.**         Lender's address is
**12800 Townsend Rd., Philadelphia, PA 19154.**

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated
**November 10, 2017.**      The Note states that Borrower owes Lender **ONE
HUNDRED FORTY NINE THOUSAND ONE HUNDRED FIFTY AND NO/100\* \* \* \* \* \***
**\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*** Dollars (U.S. ▮ )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and
to pay the debt in full not later than **December 1, 2047.**

(E) "Property" means the property that is described below under the heading "Transfer
of Rights in the Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges
and late charges due under the Note, and all sums due under this Security Instrument,
plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower.
The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider            ☐ Second Home Rider
☐ Balloon Rider             ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ Biweekly Payment Rider ☐ V.A. Rider
☐ Other(s) [specify]

(H) "Applicable Law" means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law)
as well as all applicable final, non-appealable judicial opinions.

**Initials:** _____

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.                      Page 2 of 22                    PAUDEDL   0416
                                                               PAUDEDL (CLS)
                                                 11/08/2017 06:51 AM PST



**LOAN #:** 

**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(K) "Escrow Items"** means those items that are described in Section 3.

**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants

**Initials:** _____



**LOAN #:** ███████████

and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the **County**                  of   **Philadelphia**

[Type of Recording Jurisdiction]      [Name of Recording Jurisdiction]:

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A"**

which currently has the address of    **4525 Salmon Street, Philadelphia,**

[Street] [City]

Pennsylvania **19137**                ("Property Address"):

[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**Initials:** _____

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.                                      Page 4 of 22                                      PAUDEDL   0416
                                                                                                       PAUDEDL (CLS)
                                                                                                       11/08/2017 06:51 AM PST



**LOAN #** ▮▮▮▮▮▮▮

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows.

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied

**Initials:** ₦₣ᵾ

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.                                          Page 5 of 22                                          PAUDEDL   0416
                                                                                                               PAUDEDL (CLS)
                                                                                        11/08/2017 06:51 AM PST



**LOAN #:**

to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Initials: _____

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.                              Page 6 of 22                              PAUDEDL  0416
                                                                                      PAUDEDL (CLS)
                                                                              11/08/2017 06:51 AM PST



**LOAN #**

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until

Initials: MFW

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.                                     Page 7 of 22                              PAUDEDL  0416
                                                                                           PAUDEDL (CLS)
                                                                                    11/08/2017 06:51 AM PST



**LOAN #:** ▓▓▓▓

such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If

Initials: ____



**LOAN #:**

Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

Initials: MFW

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.                                  Page 9 of 22                                  PAUDEDL   0416
PAUDEDL (CLS)
11/08/2017 06:51 AM PST



**LOAN #:**

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is

**Initials:** 

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.                                    Page 10 of 22                                    PAUDEDL  0416
PAUDEDL (CLS)
11/08/2017 06:51 AM PST

**LOAN #:**

not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance

Initials: _____

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.                                     Page 11 of 22                              PAUDEDL   0416
                                                                                              PAUDEDL (CLS)
                                                                                    11/08/2017 06:51 AM PST



**LOAN #:** ▮▮▮▮▮

ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect

Initials: **MFU**

PENNSYLVANIA–Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)**
Ellie Mae, Inc.                                       Page 12 of 22                              PAUDEDL   0416
                                                                                                  PAUDEDL (CLS)
                                                                                         11/08/2017 06:51 AM PST

**LOAN #**

such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.

Initials: MFW

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.                                   Page 13 of 22                                   PAUDEDL   0416
                                                                                                  PAUDEDL (CLS)
                                                                                          11/08/2017 06:51 AM PST



**LOAN #:** 

Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in

Initials: _MFU_

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.                                   Page 14 of 22                          PAUDEDL  0416
                                                                                          PAUDEDL (CLS)
                                                                                    11/08/2017 06:51 AM PST

**LOAN #:**

the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or

Initials: _____

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.                    Page 15 of 22                    PAUDEDL 0416
                                                                    PAUDEDL (CLS)
                                                                    11/08/2017 06:51 AM PST



**LOAN #** ▮▮▮▮▮▮▮

implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property

**Initials:** _MW__

PENNSYLVANIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.                                    Page 16 of 22                                    PAUDEDL  0416
                                                                                                   PAUDEDL (CLS)
                                                                                     11/08/2017 06:51 AM PST



**LOAN #:**

inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to

**Initials:** _NMU_



**LOAN #**

Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security

Initials: MFU

PENNSYLVANIA–Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)**
Ellie Mae, Inc.                                    Page 18 of 22                                    PAUDEDL   0416
                                                                                                    PAUDEDL (CLS)
                                                                                    11/08/2017 06:51 AM PST



**LOAN #:**

Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waivers. Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

25. Reinstatement Period. Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

26. Purchase Money Mortgage. If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

27. Effect of Survival Events. Both before and after any Survival Event, as defined below, Borrower shall:

(a) pay Funds for Escrow Items or pay Escrow Items directly as provided in Section 3 of this Security Instrument;

**Initials:** MFW

**LOAN #:** 

(b) pay the amounts and take the actions required by Section 4 of this Security Instrument,

(c) maintain insurance coverages and take the other actions required by Section 5 of this Security Instrument;

(d) maintain, repair and restore the Property and take the other actions required by Section 7 of this Security Instrument;

(e) if this Security Instrument is on a leasehold, comply with all the provisions of the lease;

(f) treat any amounts disbursed by Lender under Section 9 of this Security Instrument as additional debt of Borrower secured by this Security Instrument;

(g) maintain and pay the premiums for Mortgage Insurance, or make payments to Lender if Mortgage Insurance coverage is not available, and take the other actions required by Section 10 of this Security Instrument;

(h) permit the collection and application of miscellaneous proceeds as required by Section 11 of this Security Instrument;

(i) pay the fees required by Section 14 of this Security Instrument;

(j) continue to abide by the restrictions and take the actions required by Section 21 of this Security Instrument;

(k) pay any collection expenses under Section 22 of this Security Instrument; and

(l) pay interest at the rate payable from time to time under the Note.

"Survival Event" means any of the following:

(a) any default described in the Note;

(b) Lender requiring Borrower to pay immediately the full amount of Principal which has not been paid and all the interest that Borrower owes on that amount under the Note;

(c) Lender requiring immediate payment in full of all sums secured by this Security Instrument as described in the Note and Sections 18 and 22 of this Security Instrument;

(d) the Maturity Date as defined in the Note;

**Initials:** _MFV_

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.                         Page 20 of 22                    PAUDEDL  0416
                                                                          PAUDEDL (CLS)
                                                                   11/08/2017 06:51 AM PST



**LOAN #:** 

(e) the entry of any judgment against Borrower under the Note; and

(f) the entry of any judgment under this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____   11-10-17 (Seal)
**MARK FRANCIS WILK**                 **DATE**

Commonwealth of PENNSYLVANIA
County of BUCKS

On this, the 10th day of November 2017, before me,
Michael J. McGorrey, the undersigned officer, personally appeared MARK FRANCIS WILK, known to me (or satisfactorily proven) to be the person whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.
   In witness whereof I hereunto set my hand and official seal.

My commission expires: _____

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
MICHAEL J. McGORREY, Notary Public
Upper Southampton Township, Bucks County
My Commission Expires October 28, 2020

Title of Officer _____

**Initials:** MFU

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.                 Page 21 of 22                 PAUDEDL   0416
                                                              PAUDEDL (CLS)
                                                              11/08/2017 06:51 AM PST



**LOAN #:** ███████

Lender: ▓▓▓▓▓▓▓ia Federal Credit Union
NMLS ID ███
Loan Or▓▓▓▓ ellie Vasquez
NMLS ID ████

Certificate of Residence

I, ___Michael J- M'Gorney_____, do hereby certify
that the correct address of the within-named Mortgagee is 12800 Townsend Rd., Philadelphia, PA
19154.

Witness my hand this _____10^th_____ day of ____November__/2017

_____
Agent of Mortgagee

**Initials:** _MFW_

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT** Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.                                    Page 22 of 22                                    PAUDEDL  0416
                                                                                                    PAUDEDL (CLS)
                                                                                                    11/08/2017 06:51 AM PST





### TITLE SEARCH REPORT / ABSTRACT
### LEGAL DESCRIPTION

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, described according to a survey and plan thereof made by J. H. Webster, Jr., Surveyor and Regulator of the 10th District on the 6th day of October A.D. 1915 as follows, to wit.

SITUATE on the Southeasterly side of Salmon Street (40 feet wide) at the distance of 232 feet 1/8 of an inch Northeastwardly from the Northeasterly side of Lefevre Street (60 feet wide) in the 45th Ward of the City of Philadelphia.

CONTAINING in front or breadth on said Salmon Street 14 feet and 1/2 of an inch and extending of that width in length or depth Southeastwardly between lines parallel with Casimir Street (40 feet wide), through the centers of the party walls between this and the premises to the Southwest and Northeastwardly thereof, (erroneously omitted said course from Deed Document No.51826453 ; Seventy-six feet to a certain Four feet wide alley extending Northeastwardly) into said Casimir Street.

Being No. 4525 Salmon Street.

TOGETHER with the free and common use, right, liberty and privilege of the said alley as and for a passageway and watercourse at all times hereafter, forever

PARCEL/BRT

Being the same premises which Raymond E. Rogozinski, Executor of the Estate of Charles W. Gilmore by Deed dated 12/7/2007 and recorded 12/19/2007 in Philadelphia County as Document No. 51826453 conveyed unto Patricia A. Mcgeehan, in fee.

23